**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAURENCE GOTTESMAN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:23-cv-03435-JLS |
| | : | |
| WARDEN DAVID PENCHISHEN, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**Schmehl, J. -** */s/ JLS*                                                    **JUNE 18, 2026**

## I.     INTRODUCTION

This case arises from the tragic overdose death of Daniel Ezra Gottesman ("Daniel"),

who obtained and consumed a lethal dose of drugs while incarcerated at the Northampton

County Prison ("NCP") on September 3, 2021. Laurence Gottesman ("Plaintiff"), the father of

Daniel and Temporary Administrator of his estate, sued the County of Northampton ("County"),

Warden David Penchishen and Director of Corrections James Kostura (collectively,

"Defendants") alleging Eighth Amendment Failure to Protect claims under §1983, Fourteenth

Amendment Due Process claims under the State Created Danger theory, §1983 Supervisor

Liability claims, §1983 Civil Conspiracy claims, and Pennsylvania state law claims of Wrongful

Death, a Survival Action, Direct Negligence and Vicarious Liability, and Civil Conspiracy.

Pending before the Court is Defendants' motion for summary judgment on all claims,

filed pursuant to Federal Rule of Civil Procedure 56(a). For the reasons that follow, Defendants'

motion will be granted.

## II.    <u>BACKGROUND</u>

Unless otherwise noted, the following facts are undisputed. On May 4, 2021, Daniel was sentenced to a term of not less than 12 months to not more than 24 months' confinement at NCP following his entry of a guilty plea to a charge of Receiving Stolen Property. (ECF No. 49 at ¶ 9). He informed prison officials at his intake that he had a "substance abuse problem," and his drug abuse history was noted in a series of assessments performed during his time at NCP. (ECF No. 56 at ¶ 10).

Daniel was housed in cell B2-01 with Inmate William Simcox ("Simcox") at the time of the incident. (ECF No. 49 at ¶ 11). At various times, inmates Christian Neith ("Neith"), Jeffrey Sysak ("Sysak"), and Jose Reyes ("Reyes") were also housed in the B2-01 with Daniel and Inmate Simcox. (*Id.* at ¶ 12).

On or about September 3, 2021, corrections officers were summoned to cell B2-01 where Daniel was found unresponsive. (ECF No. 49 at ¶ 13). CPR and other first aid techniques were performed by NCP staff until additional medical staff arrived on scene and Daniel was transported to Easton Hospital. (*Id.* at ¶ 14). Daniel was pronounced dead on September 3, 2021. (*Id.* at ¶ 15). An autopsy conducted by the Northampton County Coroner determined that Daniel's cause of death was from "Acute fentanyl and Rompun intoxication with hypoxicischemic." (*Id.* at ¶ 18).

Due to the serious nature of an in-custody death, an investigation was commenced on September 3, 2021 by Northampton County Detectives assigned from the District Attorney's Office. (ECF No. 49 at ¶ 16). Following the incident, Daniel's cell was locked down and searched by County Detectives who found wax packets containing an unknown white substance among Daniel's personal belongings. (*Id.* at ¶ 19-20). Laboratory testing conducted by the

Pennsylvania State Police Crime Lab confirmed the presence of Fentanyl and Xylazine in the wax packets. (*Id.* at ¶ 21).

Several inmates provided statements to law enforcement regarding what occurred in cell B2-01 during the night of September 2, 2021, into the early morning hours of September 3, 2021. (ECF No. 49 at ¶ 22). Inmate Reyes gave a statement to law enforcement that it was common knowledge that Simcox had Fentanyl and cocaine in his possession in cell B2-01 the night/morning of September 2-3, 2021. (*Id.* at ¶ 23). He further stated that he saw Simcox try to awaken Daniel by throwing water on him, and that he then observed Simcox throw items in the toilet and flush them away prior to the corrections officers entering the cell to attend to the Daniel. (*Id.* at ¶ 24-25).

Inmate Jeffrey Sysak also gave a statement to law enforcement wherein he claimed that he observed Simcox bring Xylazine/Fentanyl directly into the cell, that he observed Simcox flush a blue colored bag down the cell toilet and that Simcox told all other cellmates to "get their stories straight." (ECF No. 49 at ¶ 26). Inmate Neith also provided a statement to law enforcement corroborating that the drugs found in cell B2-01 belonged to Simcox. (*Id.* at ¶ 27). Inmate Simcox refused to answer any questions without an attorney present. (*Id.* at ¶ 28). Inmates Reyes, Sysak and Neith admitted they had also ingested the drugs, along with Simcox. (ECF No. 56 at ¶ 40).

Following Daniel's overdose, Inmate Simcox was moved to another cell where he was housed with inmate William Jetter ("Jetter"). (ECF No. 49 at ¶ 29). On September 8, 2021, Jetter advised NCP's Captain David Collins that Simcox "had something to do with Mr. Gottesman's death," that he heard that Simcox was the "plug" for fentanyl, and that he heard Simcox say "oh sh*t, I shouldn't have gave [*sic*] him so much." (*Id.* at ¶ 30).

Simcox was subsequently charged with "drug delivery resulting in death, delivery of a controlled substance, and delivery/possession of a controlled substance to a confined person, as a result of the death of [Daniel]." (ECF No. 49 at ¶ 31). Simcox later pled guilty to a reduced charge of possession of a controlled substance. (*Id.* at ¶ 32).

Upon his arrival, Daniel was subjected to NCP's standard intake procedures, and no drugs or other contraband were discovered. (ECF No. 49 at ¶ 41). Simcox was also subjected to the intake procedures, at which time the strip search unveiled two syringes which he attempted to bring into the prison in his sock, but the x-ray body scan did not identify any drugs or other contraband. (*Id.* at ¶ 42). NCP had enhanced its efforts to prevent and detect contraband by introducing the x-ray body scanner in early 2021, prior to Daniel's death. (*Id.* at ¶ 46).

Over a decade ago, an NCP corrections officer was investigated and criminally charged for suspicion of bringing contraband into NCP, including drugs. (*See* ECF No. 60, p. 7 at ¶ 59). Director Kostura admitted that after becoming the director in 2018, he failed to implement an NCP policy requiring that corrections officers be searched upon entry to the facility despite intending to do so. (*See* ECF No. 56 at ¶ 60). Pennsylvania law also imposes that search requirement to promote safety and security. Therefore, prison policy and state regulations were not being strictly followed. Warden Penchishen also acknowledged this lapse in enforcement. (*See id.* at ¶ 65). The Pennsylvania Department of Corrections determined, however, that NCP "met or exceeded" all state standards for each of the biennial inspections for the years 2012, 2014, 2016, 2018, and 2021. (*See* ECF No. 49, Exhibits U – X, T).

Neither the Northampton District Attorney's investigation nor discovery in this case has definitively established how or when inmate Simcox obtained the drugs that caused Daniel's death and were found in the cell after his overdose.[1]

### III. <u>LEGAL STANDARD</u>

Summary judgment is proper when there is no genuine dispute of material fact, and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its

---

[1] Plaintiff disputes this fact. Although Plaintiff insists the drugs must have been supplied by an NCP corrections officer because COVID-19 precautions in place at the time rule out other possibilities, there is no direct evidence suggesting this was the case. The Northampton County Detectives in consultation with NCP staff and the Regulatory Compliance and Training Manager of TEK84 (the scanner's manufacturer) considered the possibility that Simcox brought the drugs into the facility on August 26, 2021 when, although he was subjected to an x-ray body scan, the staff member conducting the scan may have failed to detect the presence of a plastic packet in Simcox's groin. (*See* ECF No. 50, Email exchange dated December 15, 2021, filed under seal as Exhibit L).

case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## IV.   DISCUSSION

### A.  Section 1983 Eighth Amendment Failure to Protect Claim

Plaintiff claims the Defendants are liable under Section 1983 for violating Daniel's Eighth Amendment rights by failing to protect him from accessing the dangerous drugs that took his life. The Eighth Amendment prohibits prison officials from "inflict[ing]" "cruel and unusual punishments." U.S. Const. amend. VIII; *see Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Section 1983 enables plaintiffs to bring civil actions against any person who, acting under the color of state law, deprives another of rights, privileges, or immunities secured by the Constitution and/or laws of the United States. 42 U.S.C. § 1983.

The Supreme Court has held that officials may violate the Eighth Amendment by omission. Prison officials may display "deliberate indifference" to a sufficiently serious risk of harm from which they owe an inmate protection. *Estelle*, 429 U.S. at 104, 97 S.Ct. 285; *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To prevail on a failure to protect claim, a plaintiff must establish both an objective and a subjective element.

The objective element requires that Plaintiff show Daniel faced an objectively excessive risk of harm. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. A court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (emphasis in original). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to

tolerate." *Id.*; *see also Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (explaining "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'" (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981))).

In *Zakora v. Chrisman*, the Sixth Circuit Court of Appeals held that "[f]entanyl unquestionably poses a severe danger to anyone who comes in contact with it," a danger which is "magnified when introduced to a controlled environment like a prison." 44 F.4th 452, 470 (6th Cir. 2022). It follows that "the risk of injury from unfettered access to deadly drugs inside a prison is not one that today's society chooses to tolerate." *Id.* "[S]imple exposure to drugs," however, does not satisfy the objective element of the analysis. *Id.* at 472. A court must consider the risk to the injured party before the injury occurred, because "[a] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents." *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985) (citation omitted).

The Sixth Circuit Court of Appeals elaborated in *Caraway v. CoreCivic of Tennessee,* explaining that three conditions in the *Zakora* case drove the conclusion that Zakora's estate plausibly stated an objectively serious risk of harm based on Zakora's "unfettered access to deadly drugs inside a prison." 98 F.4th 679, 684 (6th Cir. 2024). The complaint in *Zakora* alleged 1) the widespread presence of drugs at the facility, 2) two overdoses occurring in the two days prior to Zakora's death, and 3) the prison officials' failure to investigate those two overdoses. Ordinarily, the risk facing the inmate in the context of a failure to protect claim is one over which prison officials have exclusive control. *Caraway*, 98 F.4th at 683. By contrast, inmates always retain the ability to choose not to take drugs and thereby avoid any risk of overdosing. *Id.* For that reason, establishing that an inmate faced an objectively serious risk of

harm based on access to drugs inside a prison requires evidence of egregious circumstances like those alleged in *Zakora*.

The evidence in the record does not show that there was a widespread presence of deadly drugs at NCP resulting in overdose deaths that went uninvestigated prior to Daniel's overdose. Although deadly drugs were somehow smuggled into NCP shortly before Daniel's death, which he unfortunately accessed, there is no evidence in the record to support a finding that there was an ongoing drug smuggling problem causing overdose deaths that was being ignored by prison officials. Daniel's death was promptly investigated by independent law enforcement officials. NCP officials cooperated with the investigators to uncover what had happened and completed incident reports. (*See* ECF No. 49-8). The evidence simply does not show that Daniel faced an objectively "substantial risk of serious harm" from deadly drugs at NCP that prison officials were deliberately indifferent to, and there is no genuine dispute of fact on this point.

Plaintiff also cannot establish the subjective component of the failure to protect claim, which requires a factual showing supporting a reasonable inference that the Defendants (1) had notice of the risk that inmates would overdose based on their unfettered access to drugs and (2) failed to reasonably respond to that risk. *Zakora*, 44 F.4th at 472; *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970. As explained above, there is no evidence that the Defendants had notice of the overdose risk prior to Daniel's overdose, which was promptly investigated.

Plaintiff argues Director Kostura and Warden Penchishen failed to enforce a policy of searching corrections officers upon their entry into the prison, and that their knowledge that this policy was not being followed is essentially equivalent to knowledge that inmates had unfettered access to drugs, simply because a failure to search corrections officers makes it more likely that

the officers could smuggle drugs into the prison undetected. Notice of an increased risk that corrections officers could smuggle drugs into the prison is not the same as notice of actual drug smuggling resulting in unfettered access to deadly drugs and a substantial risk of inmates overdosing.

Additionally, an official's failure to strictly adhere to all protocols does not equate to a deliberate indifference reflecting a subjective awareness to an excessive risk of harm. *See Beers-Capitol*, 256 F.3d at 141 (explaining that defendant's failure to follow procedures and law "is evidence of negligence in the performance of his job, but it does nothing to support the claim that he knew or must have known of the excessive risk to the plaintiffs"). Thus, no reasonable jury could find in Plaintiff's favor on this claim.

### B.  Fourteenth Amendment State Created Danger Due Process Claim

Plaintiff also brings a Fourteenth Amendment Due Process Claim under the state-created danger theory of liability. To establish such a claim, a Plaintiff must show the Defendant affirmatively placed him in danger and that the conduct was conscience-shocking. *See Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). Specifically, Plaintiff must demonstrate Defendants: 1) took an affirmative act that created or increased the risk of harm to Daniel; 2) the harm was foreseeable; 3) Daniel was a specific and foreseeable victim; and 4) the Defendants' conduct was so egregious that it "shocks the conscience." *See id*. at 1205.

There is no evidence in the record of an affirmative act taken by the Defendants that created or increased the risk of harm to Daniel. "[I]t is [the] misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d Cir. 2006). In other words, "[l]iability under the state-created danger theory is

predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992). Plaintiffs must also establish "a direct causal relationship between the affirmative act of [each Individual Defendant] and [Daniel's] harm." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006).

In *Est. of Morcho by & Through Carson v. Borough*, the estate of a pretrial detainee who died by suicide sought to hold police officers and employees liable under the state created danger theory. No. CV 22-3245, 2024 WL 21940 (E.D. Pa. Jan. 2, 2024). The Court found that allegations that the individual defendants "affirmatively" failed to monitor the decedent's cell, failed to assign sufficient personnel to monitor the cell, and failed to perform any kind of pre-detainee screening were allegations of omissions or failures to act rather than affirmative acts. *Id.* at *5. "Under the well-settled case law, such 'omissions are insufficient to trigger substantive due process liability.'" *Id.* (quoting *Kaucher*, 455 F.3d at 435).

Plaintiff argues that the Defendants "affirmatively violated NCP policy and state law by not searching correction officers for drugs and other contraband before they entered and exited NCP." (ECF No. 54-1, pg. 18). This argument fails, because the failure to search is clearly an omission, and describing it as a violation does not convert it to affirmative conduct. Separately, there is no evidence in the record to support the claim that the drugs that took Daniel's life were smuggled into the prison by a corrections officer. Intake procedures may occasionally fail to prevent incoming inmates from smuggling drugs into prisons, as was the case in *Corbin v. Bucks Cnty.*, a similar recent case decided in this district by the Honorable Chief Judge Beetlestone. No. CV 23-2784, 2024 WL 2980218 (E.D. Pa. June 13, 2024). Therefore, Plaintiff also cannot establish a direct causal relationship between the omission and the harm Daniel suffered.

### C.  Section 1983 Policymaker Liability Claims

Plaintiff brings a claim for municipal liability against the County. Public entities may be held liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, a municipality cannot be held liable under Section 1983 based solely on the conduct of its employees. *Id.* at 691, 98 S.Ct. 2018. The municipality itself must cause the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing Monell, 436 U.S. at 658, 98 S.Ct. 2018). Because Plaintiff cannot establish an underlying Eighth or Fourteenth Amendment violation, Plaintiff's *Monell* claim fails.

Plaintiff also brings supervisory liability claims against Director Kostura and Warden Penchishen. The Eleventh Amendment protects a state official from suit for monetary damages in his or her official capacity because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. ... As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citations omitted). Consequently, supervisory liability

claims are cognizable against Director Kostura and Warden Penchishen only in their individual capacities.

Like municipalities, "[i]ndividuals who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Cannon v. City and County of Philadelphia*, No. 14–5388, 2014 WL 7399037, at *3 (E.D. Pa. Dec. 30, 2014) (internal citations omitted). Additionally, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

As discussed above, there is no evidence that the failure to enforce the policy requiring that corrections officers be searched upon entry into the prison directly caused Daniel's injury. Allowing the corrections officers to violate that policy is not equivalent to allowing the officers to violate the rights of NCP inmates. There is no evidence that a corrections officer supplied the drugs Daniel ingested, and no evidence that Director Kostura and Warden Penchishen had knowledge of an actual drug problem presenting a substantial risk to NCP inmates prior to Daniel's overdose. Therefore, no reasonable jury could find Director Kostura and Warden Penchishen personally liable based on the evidentiary record.

### D. Section 1983 Civil Conspiracy Claims

Plaintiff brings civil conspiracy claims under §1983 and, separately, under Pennsylvania law. To make out a conspiracy claim under §1983, a plaintiff must show: 1) the existence of a conspiracy involving state action, and 2) a deprivation of civil rights in furtherance of a

conspiracy by a party thereto. *Rosembert v. Borough of East Lansdowne*, 14 F.Supp.3d 631, 647 (E.D. Pa 2014); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege."). As a matter of law, Plaintiff cannot establish a §1983 conspiracy claim because a deprivation of Daniel's civil rights has not been shown.

### E.  State Law Direct Negligence and Vicarious Liability Claims

Plaintiff alleges direct negligence and vicarious liability state law claims against all Defendants. Under 42 Pa. C.S. §8541, local agencies and their employees, such as the Director and Warden, are immune from liability for such claims unless an exception applies under §8542. Plaintiff must show that one of the nine statutory exceptions applies,[2] and the injury was caused by the negligent acts of the local agency or its employees acting within the scope of their duties. Here, none of the 9 statutory exceptions apply to the facts alleged. Therefore, these state law claims are barred.

### F.  State Law Civil Conspiracy Claims

To succeed on a civil conspiracy claim under Pennsylvania law, a plaintiff must establish that: 1) "two or more persons combined or agreed with an intent to do an unlawful act or to do an otherwise lawful act by unlawful means," 2) the defendants acted with malice, i.e., "an intent to injure" without justification, 3) an "overt act is done in pursuance of the common purpose or

---

[2] The nine exceptions to immunity are: (1) vehicle liability; (2) the care, custody or control of personal property; (3) the care, custody or control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) the care, custody or control of animals or (9) sexual abuse. 42 Pa. C.S.A. § 8542(b).

design," and 4) actual damages resulted from the conspiracy. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).

Additionally, "an allegation of civil conspiracy must be coupled with a substantive theory of liability in order to sustain a cause of action under Pennsylvania law." *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 418 (E.D. Pa. 2014), aff'd, 625 F. App'x 594 (3d Cir. 2016). Plaintiff failed to develop evidence of any agreement or intention among any of the Defendants to injure Daniel, and the alleged underlying theories of liability fail. Therefore, no reasonable jury could find in favor of the Plaintiff on this claim.

### G. State Law Wrongful Death and Survival Action Claims

Plaintiff also seeks damages pursuant to Pennsylvania's Wrongful Death Act, 42 Pa. C.S. § 8301, and Survival Act, 42 Pa. C.S. § 8302. Neither statute, however, creates "a substantive cause of action." *Corbin v. Bucks Cnty.*, 703 F.Supp.3d 527, 540 (E.D. Pa. 2023) (quoting *Johnson v. City of Phila.*, 105 F.Supp.3d 474, 483 (E.D. Pa. 2015)). Causes of action "under the Pennsylvania Wrongful Death Act and the Pennsylvania Survivor act ... are strictly derivative — that is, they merely 'provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death.'" *Duvall v. Hustler*, 447 F. Supp. 3d 311, 338 (E.D. Pa. 2020) (quoting *Sullivan v. Warminster Township*, 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011)). Therefore, "a viable claim on one or more of the underlying causes of action" must exist to allow wrongful death and survival claims to act as vehicles for recovery. *Johnson*, 105 F.Supp.3d at 483. As stated above, the underlying theories of liability fail, so there is no basis for these claims.

V.      **CONCLUSION**

For the reasons stated above, Defendants' Motion will be granted. A corresponding order accompanies this memorandum.